**EL DIA, INC., Plaintiff, Appellee,**

v.

**Governor Pedro J. ROSSELLO, Angel Morey, and Pedro Rosario Urdaz, Defendants, Appellants.**

**No. 98–2114.**

United States Court of Appeals, First Circuit.

Heard Jan. 6, 1999.

Decided Jan. 25, 1999.

Joseph D. Steinfield, with whom Hill and Barlow, James F. Hibey, William R. Sherman, Verner, Liipfert, Bernhard, McPherson and Hand, Chartered, John Garcia, Garcia & Fernandez Law Offices, David H. Marion, Jeremy D. Mishkin, Howard J. Bashman, Montgomery, McCracken, Walker & Rhoads, LLP, Andres Guillemard–Noble, Nachman, Guillemard & Rebollo, William L. Patton, Thomas B. Smith, Ropes & Gray, Gustavo A. Gelpi, and Feldstein, Gelpi & Gotay, were on brief for appellants.

Bruce W. Sanford, with whom Mark A. Cymrot, Lee H. Simowitz, Bruce D. Brown, Baker & Hostetler, LLP, Arturo Trias, Miguel R. Garay Auban, Trias, Melendez & Garay, and Michael Avery.

Before BOUDIN, Circuit Judge, ALDRICH, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Puerto Rico Governor Pedro Rossello and other members of his administration (collectively, "the Defendants") seek to raise a qualified immunity defense to a claim that they violated the constitutional rights of plaintiff-appellee El Dia, Inc. ("El Dia"). Specifically, the Defendants argue that they did not violate "clearly established" First Amendment law by allegedly withdrawing substantial government advertising from a newspaper to punish the paper for criticizing the Rossello administration. On this interlocutory appeal, we affirm the district court's denial of the Defendants' motion to dismiss on qualified immunity grounds.

F.3d 10, 13 (1st Cir.1997). El Dia owns, operates, and publishes *El Nueva Dia*, a daily Spanish-language newspaper circulated in Puerto Rico. Beginning in January 1997, *El Nueva Dia* published a series of articles alleging patterns of fraud and waste in the Rossello Administration. On April 13, 1997, *El Nueva Dia* published an article critical of Governor Rossello's first one hundred days of his second term in office. On April 14, 1997, eighteen government agencies that had routinely advertised in *El Nueva Dia* terminated advertising contracts with the newspaper. El Dia alleges that the Defendants ordered withdrawal of the advertising in retaliation for the critical articles. El Dia also alleges that, in a series of meetings over several months, the Defendants subsequently offered to return the advertising to El Dia if the newspaper wrote favorable editorials regarding certain of the government's initiatives.

■ On December 9, 1997, El Dia filed a three-count civil rights complaint under 42 U.S.C. § 1983. Count one, the only count that is the subject of this appeal, requested both damages and injunctive relief for violations of El Dia's First Amendment rights predicated on the allegedly retaliatory withdrawal of advertising. On January 28, 1998, the Defendants moved to dismiss all claims seeking to recover money damages against them in their individual capacities on grounds of qualified immunity. On August 28, 1998, the district court denied the motion to dismiss. The court found that the acts alleged in count one, if proven, would violate "clearly established" law and that the qualified immunity defense was therefore unavailable. The Defendants now bring an interlocutory challenge to this ruling.[1]

## I.

■ In reviewing a motion to dismiss, we accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *See Aybar v. Crispin–Reyes*, 118

## II.

■ This court reviews a district court's denial of a motion to dismiss on qualified immunity grounds *de novo*. *See Elder v. Holloway*, 510 U.S. 510, 516, 114 S.Ct. 1019,

---

1. Although most denials of motions to dismiss are not "final decisions," and thus are not independently appealable, a district court's purely law-based rejection of a qualified immunity de- fense is a "final decision," *see Johnson v. Jones*, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), and thus we review it here.

127 L.Ed.2d 344 (1994); *Rivera–Ramos v. Roman,* 156 F.3d 276, 279 (1st Cir.1998).

■ Under the doctrine of qualified immunity, public officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The doctrine protects such officials from liability for mere "mistaken judgments" about the legality of their actions. *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■ To determine whether a public official has violated clearly established law, a court must evaluate the objective reasonableness of the alleged conduct in light of legal precedent. *See Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). We therefore focus our analysis on specific facts and not on the right in the abstract, *see Rivera–Ramos,* 156 F.3d at 279–80, but "the very action in question [need not] ha[ve] previously been held unlawful," *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034; *see also Mitchell v. Forsyth,* 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("We do not intend to suggest that an official is always immune from liability or suit for a warrantless search merely because the warrant requirement has never explicitly been held to apply to a search conducted in identical circumstances."); *accord St. Hilaire v. City of Laconia,* 71 F.3d 20, 25 (1st Cir. 1995). Rather, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997) (alteration in original; internal quotation marks omitted).[2] Thus, all that is needed is that, "in the light of the preexisting law[,] the unlawfulness must [have] be[en] apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034.

### III.

■ It would seem obvious that using government funds to punish political speech by members of the press and to attempt to coerce commentary favorable to the government would run afoul of the First Amendment. *See Rosenberger v. Rector and Visitors of the Univ. of Va.,* 515 U.S. 819, 830, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) ("[I]deologically driven attempts to suppress a particular point of view are presumptively unconstitutional in funding, as in other contexts."); *New York Times Co. v. United States,* 403 U.S. 713, 723–24, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) ("The dominant purpose of the First Amendment was to prohibit the widespread practice of governmental suppression of embarrassing information.") (Douglas, J., concurring); *Grosjean v. American Press Co.,* 297 U.S. 233, 250, 56 S.Ct. 444, 80 L.Ed. 660 (1936) (government action constituting "a deliberate and calculated device ... to limit the circulation of information" is unconstitutional). The Defendants argue, however, that there is no "clearly established" law prohibiting such conduct. Moreover, the Defendants assert that the withdrawal of the advertising itself constitutes speech, and that, when acting as speaker, the government may make content-based choices. Neither argument is persuasive: the first we reject and the second is premature.

---

2. This is not to say that

a single level of specificity [is] sufficient in every instance. In some circumstances, as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue, a very high degree of prior factual particularity may be necessary.... But general statements of the law are not inherently incapable of giving fair and clear warning.... [T]he easiest cases don't even arise. There has never been ... a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [or criminal] liability. *Lanier,* 117 S.Ct. at 1227–28 (internal citations and quotation marks omitted; last alteration and last ellipsis in original).

 Clearly established law prohibits the government from conditioning the revocation of benefits on a basis that infringes constitutionally protected interests, *see Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and from terminating an independent contractor such as El Dia in retaliation for exercising its First Amendment rights, *see Board of County Comm'rs v. Umbehr,* 518 U.S. 668, 685, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996); *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 40–41 (1st Cir.1992) (holding that denial of land use permit in unjustifiable retaliation for applicant's political expression is a First Amendment violation). Indeed, in the words of the Supreme Court in *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034, "the very action in question has previously been held unlawful." *See, e.g., North Mississippi Communications, Inc. v. Jones,* 792 F.2d 1330, 1337 (5th Cir.1986) (government's withdrawal of advertisements from newspaper in retaliation for critical editorials and news violates the First Amendment); *Frissell v. Rizzo,* 597 F.2d 840, 845 (3d Cir.1979) (dicta);[3] *see also Umbehr,* 518 U.S. at 673, 116 S.Ct. 2342 (citing *North Mississippi Communications, Inc.* with approval). This is not a case of "mistaken judgment[ ]" for which the Defendants ought to be immune from liability. *Malley,* 475 U.S. at 343, 106 S.Ct. 1092. Because the law was clearly established at the time the Defendants allegedly withdrew the advertising, the Defendants are not entitled to qualified immunity. *See Harlow,* 457 U.S. at 819, 102 S.Ct. 2727

("Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action.").

 The Defendants' second and related argument, that the government was acting as a speaker and therefore may make content-based choices, must be rejected for a different reason: it rests on a factual premise we cannot now accept. In assessing whether a Fed R. Civ. P. 12(b)(6) motion was properly denied, we confine our analysis to the pleadings, as did the district court. *See Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996). Nowhere in the complaint is there a hint that the Defendants were "trying to advance [their] own speech interests" by withdrawing the advertisements. Rather, the complaint alleges that the Defendants punished El Dia for asserting *its* speech interests. Discovery may yet show the Defendants were only, or at least primarily, interested in "ensuring that the force and credibility of its advertising messages [we]re not undermined by the surrounding editorial context." Br. of Defendants at 16. If so, the qualified immunity question may well be cast in a different light. *Cf. Umbehr,* 518 U.S. at 685, 116 S.Ct. 2342 (giving the government the opportunity to "persuade the District Court that [its] legitimate interests as contractor, deferentially viewed, outweigh the free speech interests at stake"); *see also*

3. Citing *Knight v. Mills,* 836 F.2d 659, 668–69 (1st Cir.1987), the Defendants argue that law from outside this circuit, standing on its own, cannot constitute clearly established law for the purposes of the qualified immunity defense. We do not read *Knight* to establish such a broad proposition. The question in that case was one explicitly reserved by the Supreme Court. In any event, the decisions we have cited hardly stand on their own. *See, e.g., Umbehr,* 518 U.S. at 673, 685, 116 S.Ct. 2342; *Nestor Colon Medina & Sucesores, Inc.,* 964 F.2d at 40–41; *cf., e.g., Ackerley Com. of Mass., Inc. v. City of Somerville,* 878 F.2d 513, 521 (1st Cir.1989) (municipality may not use protected speech as a basis on which to decide whether advertisers will be permitted to continue to post billboard advertisements that do not conform with current law); *Packish v. McMurtrie,* 697 F.2d 23, 25 (1st Cir. 1983) (selectmen may not retaliate against fire-

man's political speech by refusing him discretionary indemnification for medical expenses). Moreover, we are not inclined to adopt either a hard-and-fast rule that precedent from another circuit is always determinative of whether a law is clearly established, *see Romero v. Kitsap County,* 931 F.2d 624, 629 (9th Cir.1991), or a rule that such precedent is always irrelevant, *cf. Ohio Civil Serv. Employees Ass'n v. Seiter,* 858 F.2d 1171, 1177 (6th Cir.1988) (other courts relevant only in "extraordinary case"). Among other factors, the location and level of the precedent, its date, its persuasive force, and its level of factual similarity to the facts before this Court may all be pertinent to whether a particular precedent "clearly establishes" law for the purposes of a qualified immunity analysis. *See Johnson–El v. Schoemehl,* 878 F.2d 1043, 1049 (8th Cir.1989).

*Behrens v. Pelletier,* 516 U.S. 299, 307, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (permitting the qualified immunity defense to be raised at subsequent stages in the same case, even where it has been previously rejected). Because the second argument is based on assertions not found in the complaint, we must decline to consider it on this appeal.

## IV.

For the foregoing reasons, we *affirm* the district court's denial of the Defendants' motion to dismiss on qualified immunity grounds.

*Affirmed.* Costs to appellees.