**Dean KINNEY and David Hall, Plaintiffs,**

**v.**

**Bobby WEAVER, et al., Defendants.**

**No. 9:99–CV–77.**

United States District Court, E.D. Texas, Lufkin Division.

May 16, 2000.

Curtis Bradley Stuckey, Stuckey Garrigan & Castetter, Nacogdoches, TX, Les Mendelsohn, Les Mendelsohn & Associates PC, San Antonio, TX, for Dean Kinney, David Hall, plaintiffs.

Robert Scott Davis, Louis Charles Edmond Van Cleef, Flowers Davis Fraser Derryberry & Van Cleef, Tyler, TX, for Bobby Weaver, Gregg County Sheriff, Bob Green, Gregg County, Harrison County, defendants.

Michael Keith Dollahite, Ritcheson Dollahite & Lauffer, Tyler, TX, for WA "Bill" Young, J.B. Smith, City of Tyler, Smith County, East Texas Police Chief's Ass'n, defendants.

Jay Nelson Green, Potter Minton Roberts Davis & Jones, Tyler, TX, for Ronnie Moore, Kilgore Director of Public Safety, Charles "Chuck" Williams, City of Marshall Police Chief, Ted Gibson, City of Kilgore, City of Marshall, City of Nacogdoches, defendants.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

Plaintiffs, Dean Kinney and David Hall, brought this action alleging that the Defendants[1] violated: (1) 42 U.S.C. § 1983 by retaliating against the plaintiffs for speaking out about a matter of public concern; (2) 42 U.S.C. § 1985 by conspiring to intimidate witnesses; (3) the plaintiffs Fourteenth Amendment rights to Due Process; and (4) Texas state law by tortiously interfering with the plaintiffs' busi-

---

1. There are 15 defendants. This number includes various individuals as well as municipalities. The named municipality defendants are the (1) City of Tyler, (2) City of Kilgore, (3) City of Marshall, (4) Smith County, (5) Harrison County, (6) Gregg County, and the (7) City of Nacogdoches. The named individuals are: (8) Sheriff Bobby Weaver of Gregg County, (9) Sheriff J.B. Smith of Smith County, (10) Sheriff Bob Green of Harrison County, (11) Police Chief of Nacogdoches Ted Gibson, (12) Director of Public Safety of Kilgore Ronnie Moore, (13) Tyler Police Chief W.A. "Bill" Young, (14) City of Marshall Police Chief Charles Williams. The lone entity named is the (15) East Texas Police Chief's Association.

ness. Defendants have moved for summary judgment contending that the law and facts do not create a cause of action, and, in the alternative, that the various defendants are entitled to qualified immunity. For the reasons explained below, the motion is denied.

## I. BACKGROUND

The circumstances surrounding this case are the subject of some disagreement. Both sides have developed theories about these circumstances and what they mean. Generally, the court is not concerned with "theories." To the extent these "theories," are found in the record as either direct or circumstantial evidence the court will consider them. However, to the extent they are merely speculation or conclusory allegations they have no part in the consideration of a motion for summary judgment. On a motion for summary judgment, the court is only concerned about whether genuine issues of material fact exist. From the record before the court now, these basic facts have been established.

Plaintiffs were both instructors at the East Texas Police Academy at Kilgore College in Kilgore, Texas. In August 1999, the plaintiffs both testified as expert witnesses against a police department in an excessive force/police misconduct case in Kerrville, Texas. The plaintiffs did not train any of the policemen or agencies involved in the Kerrville case. Some time after the plaintiffs testified, the problems, which are at the heart of this case, arose.

Previous to the two plaintiffs testifying in the Kerrville case, the defendant cities and counties had sent law enforcement officers and cadets to the East Texas Police Academy for basic training and continuing education. There was no contract

requiring the defendants to do this. After the plaintiffs testified as experts, many of the defendants expressed their displeasure about this to Dr. William Holda, the president of Kilgore College. Defendant Moore wrote Dr. Holda stating that the plaintiffs' actions "seem[ ] to reflect a growing trend of some of your personnel to be gaining profit from garnering evidence and providing testimony against other Police Officers and Departments...." Defendant Chief Williams wrote Dr. Holda and stated "I think it is deplorable to think that instructors for our Police Academy hire themselves out as an expert witness: *AGAINST* law enforcement agencies." Defendant Young also wrote Dr. Holda about Kinney and Hall where he stated that he thought the plaintiffs' expert testimony could become a conflict of interest.[2] Meetings between Dr. Holda and the defendants took place.

At a meeting for the defendant East Texas Police Chiefs' Association, the situation about the plaintiffs was discussed in detail. The minutes of the meeting reflect this. They state in pertinent part:

> Chief Young stated that the Chiefs and Sheriffs did not want the two instructors fire[d] only that they not be allowed to instruct police officers or cadets. Chief Young stated that he was not going to send any of his officers to any schools taught by Dean Kinney or David Hall. This point was repeated by several other Chief[s] and Sheriffs present including Chief Chuck Williams [from] Marshall P.D., Ronny Moore from Kilgore P.D., Ted Gibson from Nacogdoches P.D., Sheriff Bobby Weaver from Gregg Co. S.O. and others.

. . . . .

2. Defendant Young wrote:
 > Mr. Hall and Mr. Kinney's positions with Kilgore Junior College and their "expert testimony for hire" part time jobs constitute, in my mind, a major conflict of interest.
 > It is not our preference to have these two instructors teach our officers and also en-

 > gage in legal combat with them in the judicial system. This matter will force us to consider alternative methods to achieve our training needs if not resolved as soon as possible.
 > Def's Exhibit 9.

Chief Ted Gibson then stated that he was deeply concerned about the quality of the instruction given by the two Kilgore Academy instructors. Chief Gibson also stated that he was not going to send any of his officers to any school taught by the two instructors. He also felt that it should be up [to] the Chiefs to pick and choose the service they receive from Kilgore Academy and it should be up to the Academy to deliver that service. At that point it was agreed that none of the Chiefs or Sheriffs present would send their officers to any classes taught by either Dean [Kinney] or David Hall.

In media reports, some of the defendants made negative remarks about the plaintiffs' testimony. *See* Pl's Exhibit 70, videotape. Some of the defendants have admitted that they would not send their students to classes taught by the plaintiffs because of their expert testimony. *See* Williams Dep. p. 49, ln. 13 through pg. 50, ln. 5; Minutes of East Texas Police Chiefs Association.

The plaintiffs contend that the record reflects the defendants "blackballed" or boycotted the plaintiffs' classes at the Academy because the plaintiffs broke the "code of silence." The "code of silence" the plaintiffs refer to is the unwritten code that police officers should not testify against other police officers.[3] Defendant Weaver during a tv interview referred to an "unwritten code" that the plaintiffs had violated by testifying as experts. It is the plaintiffs' position that this boycotting is a violation of the laws cited above.

The defendants, on the other hand, have maintained that they refused to send their officers to classes taught by Kinney and Hall because of potential conflicts of interests. The defendants maintain that it is a conflict of interest for the plaintiffs to testify against other police officers in the

State of Texas since it is conceivable that some of the students in the East Texas Police Academy may work in those jurisdictions where the plaintiffs testify as experts. In support of this, the defendants point to a letter Dr. Holda wrote to the plaintiffs. Dr. Holda's letter was written after he met with many of the defendants to discuss their concerns about the plaintiffs' teaching abilities. The letter demonstrates that Dr. Holda felt that most of the defendants' concerns focused on a potential conflict of interest that may arise if the plaintiffs testified as experts in a case involving any of the defendant police agencies.

The parties have completed discovery and presented their arguments to the court. The record is full of evidence, both circumstantial and direct, backing each of the respective party's positions. After reviewing the record and the arguments of the parties, the court concludes that summary judgment is not appropriate and this case may proceed to trial.

## II. STANDARD OF REVIEW

It is well-settled that a motion for summary judgment can be granted only if the matters considered by the court clearly demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); FED.R.CIV.P. 56(c). It is equally well-settled that the burden of proving that "no genuine issue of material fact exists," rests with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this threshold, the burden shifts to the nonmoving party to demonstrate with significant probative evidence that there exists a genuine issue of fact to be

---

**3.** The code of silence is discussed in *Snyder v. Trepagnier,* 142 F.3d 791, 797 & n. 6 (5th Cir.1998). An expert in that case testified that the code of silence is "a code within the police department that, regardless what behavior, one police officer does not report or testify against another police officer." *Id.* at n. 6.

tried. *Kansa Reinsurance v. Congressional Mort. Corp.*, 20 F.3d 1362, 1371 (5th Cir.1994); *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir.1994). Only evidence, not unsworn pleadings, memoranda or the like, will satisfy this burden. *Larry v. White*, 929 F.2d 206, 211 n. 12 (5th Cir. 1991). If the opposing party bears the burden of proof at trial, the moving party need not submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir.1991). Summary judgment is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party. *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc). In making this assessment, factual controversies are to be resolved in favor of the nonmoving party. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam).

The court concludes that summary judgment is not proper in this case because there are genuine issues of material fact in each one of the plaintiffs' claims. Thus, the defendants have not met their burden. Moreover, the defense of qualified immunity does not prohibit this case from proceeding to trial.

## III. ANALYSIS

### A. Qualified Immunity

The individual defendants have asserted the defense of qualified immunity against all of the plaintiffs' federal causes of action. The "qualified ... immunity doctrine was established to reconcile two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Op-

posing this is the fear that personal liability will inhibit public officials in the discharge of their duties." *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994). Accordingly, public officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ In order to establish that the defendants are not entitled to qualified immunity, plaintiffs must satisfy a three-part test. *See, e.g.; Morris v. Dearborne*, 181 F.3d 657, 665 (5th Cir.1999). First, "[a] court evaluating a claim of qualified immunity must first · determine whether the plaintiff has alleged the deprivation of a constitutional right at all." *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *see also Morris*, 181 F.3d at 665. Second, the court must decide "whether that right was clearly established at the time of the alleged violation." *Wilson*, 526 U.S. at 609, 119 S.Ct. 1692. Third, the court "must determine whether the record shows that the violation occurred, or at least gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly-established right." *Morris*, 181 F.3d at 666 (quoting *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir.1999)). Finally, "[i]f it is determined that the official's conduct was unconstitutional, then the court must decide whether the conduct was nonetheless 'objectively reasonable.'" *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir.1999) (citing *Eugene v. Alief Indep. School Dist.*, 65 F.3d 1299, 1305 (5th Cir.1995)), *reh'g granted* by 205 F.3d 203.[4]

---

4. The Fifth Circuit has not been consistent in its analysis of qualified immunity. *Compare Jones v. City of Jackson*, 203 F.3d 875, 879–80 (5th Cir.2000) (using a two step test) *with Wallace v. Wellborn*, 204 F.3d 165, 167 (5th Cir.2000) (using a three step test). Some

cases refer to this as a two part test by combining the deprivation of a "constitutional or statutory right" prong and the "clearly established" prong together. *See Shipp v. McMahon*, 199 F.3d 256, 261–62 (5th Cir.2000). This slight difference in phrasing does not

### 1. *Deprivation of a Constitutional or Statutory Right*

The plaintiffs have satisfied the first part of the qualified immunity test because it is clear from both the evidence in the record and the plaintiffs' complaint that the plaintiffs have adequately alleged the deprivation of both a constitutional right and a statutory right. The plaintiffs have submitted evidence demonstrating that their constitutional right to a property interest under the Due Process Clause was deprived as a result of the alleged boycott. Furthermore, the record reflects that the plaintiffs' rights under 42 U.S.C. § 1985 and the First Amendment have also been deprived.

### a. Plaintiffs' Rights Under 42 U.S.C. § 1985

■ The defendants have argued that the plaintiffs do not have a claim under either the Due Process clause or under § 1985. The defendants reason that § 1985 does not apply to voluntary expert witness testimony. The court disagrees. The language of the statute is clear, it reads in relevant part:

> If two or more persons ... conspire to deter, by force, intimidation, or threat, *any* party or *witness* in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified...
>
> (3) ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985 (emphasis added). Section 1985 clearly applies to expert witnesses and the defendants have not cited a single case to the contrary. The statute explicitly states that it is unlawful to conspire to deter "any" witness from testifying in any court of the United States.

The defendants have argued that only fact witnesses can testify "freely, fully, and truthfully," thus, the defendants conclude expert testimony does not qualify for protection under the statute. However, the statute does not speak in terms of "fact" witnesses or "opinion" witnesses. The statute only states that "any" witness who testifies must give truthful testimony. Expert witnesses take the same oath that non-experts take. That is, that they swear to tell the *truth* and nothing but the *truth*. Therefore, the court concludes that the plaintiffs have submitted sufficient evidence that their statutory rights have been deprived under § 1985. *See Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 22–24 (2d Cir.1984) (discussing how the term "witness" is not defined and holding that a potential expert witness who was not called to testify qualified for protection under the statute).

### b. Plaintiffs' Rights to be Free from Retaliation

■ The court concludes that the plaintiffs' First Amendment claim under 42 U.S.C. § 1983 also sufficiently alleges the deprivation of a constitutional right. For a First Amendment retaliation claim to be valid the record must demonstrate that: "(1) the employee suffered an adverse employment decision; (2) the employee's speech involved a matter of public concern; (3) the employee's interest in commenting on matters of public concern outweighs the defendants' interest in promoting efficiency; and (4) the employee's speech must have motivated the defendants' action." *Lukan v. North Forest ISD*, 183 F.3d 342, 346 (5th Cir.1999) (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir.1999)); *see also Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir.1998).

affect this court's analysis of the underlying issues.

First, it is clear from the record that both plaintiffs have suffered adverse employment actions. "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Texas Dep't of Crim. Justice*, 37 F.3d 1146, 1149 (5th Cir.1994) (citing *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir.1994)). Because of the alleged boycott very few, if any, officers signed up to take classes taught by the plaintiffs Kinney and Hall. As a result of the boycott, Kinney was reassigned from the East Texas Police Academy to the criminal justice department of Kilgore College. Kinney is paid approximately $15,000.00 less per year at this new position. *See* Kinney Aff. at ¶ 12; Holda Aff. at ¶ 16. Plaintiff Hall could not afford to take such a pay cut and he resigned from the East Texas Police Academy. He now works for the City of Carrollton Police Department. *See* Hall Aff. at ¶¶ 2, 36; Holda Aff. at ¶ 17. These actions are the equivalent of a demotion since both Kinney and Hall are now earning substantially less than they were before the alleged boycott took effect.

Second, there can be little doubt that the plaintiffs' testimony in the Kerrville case involved a matter of public concern. The defendants wisely have not focused their arguments on this issue. In Kerrville, the plaintiffs testified about the excessive use of force by police officers. The law books are full of excessive force cases. Political candidates in various parts of the country focus on reforming police department procedures as part of their campaign platforms. Currently, there is a national debate over whether federal authorities should have entered Elian Gonzalez's uncle's home in Miami with guns drawn in order to return the boy to his father. Thus, there can be little doubt that law enforcement's use of excessive force is a matter of public concern.

To satisfy the third element a plaintiff must demonstrate that his interest in commenting on matters of public concern outweighs the defendants' interest in promoting efficiency. This is known as the *Pickering* balancing test. *See Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Individuals will have a hard time succeeding in an excessive force case without the assistance of experts who are intimately acquainted with police procedures. Because of this, the court concludes that Hall and Kinney had a significant interest in testifying about excessive force in the Kerrville case. The court cannot fathom how this interest could possibly be outweighed by the defendants' interest in promoting efficiency. Contrary to the defendants' arguments, there is nothing inefficient about having two instructors testify about excessive force in a case hundreds of miles away from the Academy in which they teach.

Finally, the record demonstrates that the plaintiffs' speech motivated the decision to boycott their business. None of the defendant law enforcement agencies ever reported having any problems with either Kinney or Hall until they testified as experts for the plaintiffs in Kerrville. Hence, it is quite clear that the plaintiffs' speech motivated all of the defendants' subsequent actions.

The defendants have argued that there can be no First Amendment claim because the defendants did not have a contractual relationship with the plaintiffs. Nevertheless, as will be discussed in further detail in the "clearly established" prong of the qualified immunity test, this is irrelevant. The defendants cannot do indirectly that which they could not do directly. Obviously, the defendants could not fire one of their own employees for speaking out about a matter of public concern (assuming the plaintiff establishes the *Pickering* balance test in his/her favor). Therefore, it seems a logical extension of this principle to conclude that the defendants cannot "boycott" a business in the hopes that two of that businesses's employees would be fired or reassigned because of the economic harm imposed on that business.

There is ample evidence currently in the record for a jury to conclude that the defendants' actions were intended to suppress the plaintiffs' rights to free speech. Moreover, summary judgment should be used "most sparingly in ... First Amendment case[s] ... involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities," *Porter v. Califano*, 592 F.2d 770, 778 (5th Cir.1979), all of which are present here.

### c. Plaintiffs' Rights under the Due Process Clause

■ The Due Process Clause prevents governmental entities from depriving a person of life, liberty, or property without due process of law. The plaintiffs' claims under the Due Process clause are related to their First Amendment claims. The plaintiffs have submitted sufficient evidence to demonstrate that their property interests in their continued employment at the Academy have been deprived due to the alleged boycott.

The defendants have asserted that the plaintiffs do not have a property interest in their employment because Texas is an at-will employment state. The defendants further argue that they could not have deprived the plaintiffs of their Due Process rights because they did not employ the plaintiffs, Kilgore College did.

The court finds these arguments unpersuasive. The record demonstrates that the plaintiffs' livelihood has been taken away since no students will attend their classes due to the alleged boycott. The defendants refused all efforts by the plaintiffs to meet and discuss the alleged conflict of interest. The record, when read in a light most favorable to the plaintiffs, is clear that the defendants refused to send students to the plaintiffs' classes. While it is true that public entities may discharge employees unprotected by a reasonable expectation of continued employment for any job-related reason or for no reason at all, it is not true that they may do so for a

reason which infringes "constitutionally protected rights." *Brantley v. Surles*, 718 F.2d 1354, 1358 (1983) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). The fact that the defendants did not technically employ the plaintiffs is immaterial. The defendants had the power to run the plaintiffs out of business since they could choose which instructors taught the classes in which their officers enrolled. *See, e.g., Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (stating that "the Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression") (quotation omitted). Thus, the court concludes the plaintiffs have adequately supported a claim for violation of Due Process rights.

### 2. Were these Rights Clearly Established?

■ As noted above, government officials performing discretionary functions generally are granted qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727. In *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court explained that what "clearly established" means in this context depends largely "upon the level of generality at which the relevant 'legal rule' is to be established." Furthermore, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. 3034.

Thus, the analysis focuses on specific facts and not on the right in the abstract, but "the very action in question [need not] ha[ve] previously been held unlawful." *Id.* The Court has further clarified this by adding that "a general constitutional rule

already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *United States v. Lanier*, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (alteration in original; internal quotation marks omitted); *Kipps v. Caillier*, 205 F.3d 203, 205–06 (5th Cir.2000) (holding that an assistant football coach alleged the violation of a clearly established right for familial relationships when he was terminated because his son chose to play football for another university even though there was no case directly on point). Therefore, all that is needed is that, "in the light of the preexisting law[,] the unlawfulness must [have] be[en] apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034; [5] *Shipp*, 199 F.3d at 262 ("to show that a right is clearly established, the plaintiff does not have to refer to precedent that is directly on point, or that declares that the conduct in question is unlawful. Rather, the right is clearly established if based on preexisting law, the unlawfulness of the conduct in question is apparent.") (citations omitted).

This court has little trouble in concluding that each of the plaintiffs' rights which were allegedly deprived by the defendants were clearly established at the time of the alleged violation. First, § 1985 is clear in its intentions. The statute states that two or more persons shall not conspire to deter any witness from testifying in court. There is ample evidence in the record for a jury to conclude that the defendants conspired to deter the plaintiffs from testifying in court by boycotting their business.

This evidence includes: statements by at least one of the defendants to the news media that the plaintiffs "prostituted" themselves by testifying as experts. *See* Pl's Exh. 70 (videotape of various news reports). The meeting by some of the defendants with Dr. Holda where some of the defendants threatened to stop sending cadets to any classes taught by the plaintiffs. *See* Holda Aff. at ¶¶ 10–12, Young dep. at p. 65, ln. 22 through p. 66 ln. 9. The minutes of the East Texas Police Chief's Association where the plaintiffs' actions and what to do about them were discussed at length.

Although there may not be a *white horse* case holding that police officers should not conspire to deter expert witnesses from testifying by boycotting their business, this court is confident that some of the most respected law enforcement officials in all of East Texas should have known that doing so violated the statute.

Similarly, numerous cases have held that governmental entities cannot do indirectly that which they cannot do directly. *See Board of County Comm'rs v. Umbehr*, 518 U.S. 668, 674, 116 S.Ct. 2342, 135 L.Ed.2d

---

5. This does not mean that

> a single level of specificity [is] sufficient in every instance. In some circumstances, as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue, a very high degree of prior factual particularity may be necessary.... But general statements of the law are not inherently incapable of giving fair and clear warning.... [T]he easiest cases do not even arise. There has never been ... a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [or criminal] liability.

*Lanier*, 520 U.S. at 271, 117 S.Ct. 1219 (internal citations and quotation marks omitted). The Supreme Court in *Wilson v. Layne*, 526

U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) addressed the situation of when a higher factual particularity may be needed. In *Wilson*, the Court held that bringing reporters into a home during the execution of a search warrant did not violate clearly established law. The Supreme Court relied partly on the fact that the plaintiffs could not cite any cases in their controlling jurisdiction or a consensus of other cases that a reasonable officer could not have believed his actions were lawful. *Id.* This court does not read that opinion as requiring case law from a plaintiffs' controlling jurisdiction or a consensus of cases elsewhere as requirements to overcome the clearly established prong. *See Shipp*, 199 F.3d at 262 (discussing the clearly established prong).

843 (1996) (holding that the First Amendment protects an independent contractor from termination or prevention of the automatic renewal of his at-will government contract in retaliation for exercising his freedom of speech); *El Dia, Inc. v. Rossello*, 165 F.3d 106, 109 (1st Cir.1999) (holding that a government could not withdraw advertising from a newspaper which published articles critical of that administration because it violated clearly established First Amendment law prohibiting retaliation for the exercising of freedom of speech); *North Mississippi Communications v. Jones*, 792 F.2d 1330, 1337 (5th Cir.1986) (same). The defendants violated clearly established Due Process and First Amendment law by boycotting the plaintiffs' business in an effort to get them removed from the college.

The First Circuit reasoned in *El Dia* that "clearly established law prohibits the government from conditioning the revocation of benefits on a basis that infringes constitutionally protected interests, and from terminating an independent contractor such as El Dia in retaliation for exercising its First Amendment rights." 165 F.3d at 110 (citing *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694 (1972) and *Umbehr*, 518 U.S. at 674, 116 S.Ct. 2342). This reasoning applies equally to the facts of this case.

The plaintiffs in this case are the equivalent of a governmental independent contractor since they were hired by the defendants to train their officers. Governmental entities cannot retaliate against independent contractors who exercise their freedom of expression to the dismay of the government officials. *Umbehr*, 518 U.S. at 674, 116 S.Ct. 2342. In *Umbehr*, the Supreme Court noted that "constitutional violations may arise from the deterrent, or 'chilling' effect of governmental [efforts] that fall short of a direct prohibition against the exercise of First Amendment rights ... the government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected

... freedom of speech' even if he has no entitlement to that benefit." *Id.* (citations omitted, alteration in original). This is exactly what allegedly occurred in the case *sub judice*. The defendants were undoubtedly aware of the fact that Kilgore College could not terminate the plaintiffs for exercising their First Amendment rights. Yet, the defendants attempted to indirectly accomplish this result by refusing to send students to the classes taught by the plaintiffs. Simply put, there is evidence in the record demonstrating that the defendants set in motion events that they should have foreseeably seen would cause the deprivation of Kinney and Hall's constitutional rights. *See, e.g., Morris v. Dearborne*, 181 F.3d 657, 672 (5th Cir.1999) (stating that a plaintiff must prove the defendant "set in motion events that would foreseeably cause the deprivation of Plaintiffs' constitutional rights" and then finding a § 1983 violation when a teacher provided false information to a court which then removed a child from her parent's care). Thus, this court concludes that the defendants violated clearly established First Amendment and Due Process law by allegedly boycotting the plaintiffs' business in retaliation for them testifying as expert witnesses against another police department.

The defendants claim that if they violated any laws, those laws were not clearly established at the time the violations occurred. The defendants primarily rely on two cases in support of their argument. *See Tedder v. Norman*, 167 F.3d 1213 (8th Cir.1999); *Hoover v. Morales*, 164 F.3d 221 (5th Cir.1998). In *Hoover*, the Fifth Circuit held that a rider to the 1997 appropriations bill in the Texas Legislature and a university employment policy which prohibited university professors from being expert witnesses against the state was unconstitutional. 164 F.3d at 226. The *Hoover* court held the state's interest in preventing state employees from speaking in a manner contrary to the state's interest

did not outweigh the free speech rights of the professors, especially as applied to expert testimony. *Id.* ("The notion that the State may silence the testimony of state employees simply because that testimony is contrary to the interests of the State in litigation or otherwise, is antithetical to the protection extended by the First Amendment.").

The defendants point to two sections of this opinion which they believe help their cause. The first is that the *Hoover* court specifically recognized that "[w]e may safely assume that there will be occasions when the State's interest in efficient delivery of public services will be hindered by a state employee acting as an expert witness or consultant." *Id.* at 226. In the defendants' opinion, this case raises such an occasion. The court respectfully disagrees. The present defendants have not identified any instances where the "efficient delivery of public services" would be hindered by the plaintiffs testifying as experts in Kerrville. The defendants assert that there is a conflict of interest in the plaintiffs' testimony. The court is not so convinced. It is hard to imagine how testimony in a case some 430 miles from the Academy interrupts the "efficient delivery of public services." The testimony the plaintiffs gave in Kerrville did not change the format of the classes they were teaching in Kilgore by any degree. The Fifth Circuit has not defined the situations in which the "efficient delivery of public services" may be disturbed. Whatever those situations may be, this court is confident they are not present here.

The defendants also claim that Judge DeMoss's concurrence supports their argument in favor of qualified immunity. In his concurrence, Judge DeMoss stated "In my view this case raises a serious and fundamental issue not previously decided by the United States Supreme Court or this Court." The defendants reason that this statement demonstrates that there is no possible way they could have violated clearly established law by allegedly boycot-

ting the plaintiffs' business. This argument fails for two reasons. First, the alleged boycott continues to this day. Thus, at the very least, it was clearly established on December 31, 1998, the date of the *Hoover* opinion, that it was unconstitutional for governmental employers to suppress freedom of speech simply because one of their employees was testifying as an expert against the state.

Second, Judge DeMoss's statement that this was a case of first impression was directed at the particular policy and rider bill at issue in that case. *See* 164 F.3d at 221. His concurrence was not dealing with the situation presented here—an alleged retaliation against police instructors who testified against a police department located several hundred miles away from the students they taught. This is made clear by reading Judge DeMoss's opinion in context. Judge DeMoss stated in applicable part:

> In my view this case raises a serious and fundamental issue not previously decided by the United States Supreme Court or this Court. *That is, whether the State of Texas or one of its state universities can prohibit a state employee or a full-time professor at the university from serving as a compensated expert witness against the state when the subject matter of his testimony and the basis of his qualifications as an expert are directly connected with, and are the product of, his employment by the state.* That issue was expressly left undecided by the Supreme Court in *National Treasury Employees* and needs far more factual development and legal analysis by the parties and the Court than it has received on the hearing for preliminary injunction.

164 F.3d at 228 (emphasis added). Hence, it is clear to this court that Judge DeMoss was not referring to the situation at hand.

The second case relied upon by the defendants is equally inapplicable. The defendants have cited *Tedder,* 167 F.3d 1213 (8th Cir.1999) for the proposition that the

interests of the defendants outweigh any interests the plaintiffs had in testifying as experts in the Kerrville case. In *Tedder,* a deputy director of a state law enforcement training academy was demoted after he gave voluntary deposition testimony for a plaintiff in an excessive force case against a police department. 167 F.3d at 1214. The Eighth Circuit held that when the plaintiffs' right to free speech was balanced against the state's legitimate interest in regulating the speech of its employees it became clear that the state's interests prevailed. *Id.* at 1215. The court noted that the plaintiff's testimony posed a significant threat of disruption to the relationships between the state training academy and the law enforcement agencies that it trained. *Id.*

No such disruption exists in this case. In *Tedder,* the plaintiff worked for an Academy which actually trained the department he was going to be testifying against. Here, by contrast, the plaintiffs' testified against a police department located in an entirely different part of the state than the one in which they trained officers. *Tedder* cannot be read to allow the dismissal of municipal defendants when the same factors are not present. This court believes that under the facts of this case, the plaintiffs' interests in speaking out about police abuse outweigh the state's interest in maintaining the efficiency of its operations. There are genuine issues of fact remaining in this case as to whether the plaintiffs' expert testimony could legitimately cause any disruptions in the defendants' operations. Moreover, it must be determined whether these disruptions, if any, were the result of a perceived "conflict of interest" or the "blackballing" of plaintiffs for turning against one of their own.

This court is persuaded that the heads of various law enforcement agencies located throughout East Texas knew that boycotting an individual's business because

that person exercised their rights under the First Amendment to speak out against excessive use of force violated clearly established law. The court concludes that the allegations of the plaintiffs raise genuine issues of material fact with regards to whether clearly established law was violated. Thus, the issue may be presented to a jury. *See Snyder v. Trepagnier,* 142 F.3d 791, 799–800 (5th Cir.1998) ("if ... there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question.") (citing *Presley v. City of Benbrook,* 4 F.3d 405, 410 (5th Cir.1993)); *Brown v. Doe,* No. Civ.A. 98–99, 1999 WL 1243057 at *4 (E.D.La. Dec.21, 1999) (stating that qualified immunity issues are routinely sent to a jury when genuine issues of material fact exist).

### 3. *Objective Reasonableness*

■ The third step of the qualified immunity analysis is to evaluate the objective reasonableness of the alleged conduct in light of legal precedent. *See Kipps,* 205 F.3d at 206, and 197 F.3d at 768. As discussed above, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). However, "the very action in question [need not] ha[ve] previously been held unlawful." *Id.; see also Mitchell v. Forsyth,* 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("We do not intend to suggest that an official is always immune from liability or suit for a warrantless search merely because the warrant requirement has never explicitly been held to apply to a search conducted in identical circumstances."). Generally, "objective reasonableness is a matter of law for the courts to decide, not a matter for the jury." *Williams v. Bramer,* 180 F.3d 699, 703 (5th Cir.1999).[6] "Whether the defen-

---

6. This statement seems to conflict with some other authority in the Fifth Circuit. For ex-

ample, in *Snyder,* 142 F.3d at 799–800 the Fifth Circuit recognized that under appropri-

dants' conduct was objectively reasonable depends on the circumstances controlling the defendants as well as clearly established law in effect at the time of the defendants' actions." *Shipp*, 199 F.3d at 262. The objective reasonableness inquiry is "conducted without regard for the law enforcement officer's actual state of mind or subjective motivations." *Fontenot v. Cormier*, 56 F.3d 669 (5th Cir.1995).

As mentioned above, at the time of the defendants' actions the law was clearly established that it was unlawful for governmental entities to boycott a business merely because that business's proprietors had spoke out about a matter of public concern. There is enough circumstantial evidence in the record for this court to conclude that it was not objectively reasonable for the defendants to violate this clearly established right. While it is true that the defendants are allowed to express their own opinions publicly about the plaintiffs' expert testimony, it does not follow that the defendants can organize a boycott and economically retaliate against the plaintiffs for exercising their own First Amendment rights. The court is confident that, given the law at the time and the circumstances of this case, no reasonable law enforcement official would have thought it objectively reasonable to organize a boycott like the one which allegedly occurred here.

### B. Immunity Under the State Law Claim

 The defendants have maintained that the plaintiffs' state law claim for Tortious Interference is subject to official immunity under Texas state law, Official immunity under Texas law is similar to qualified immunity under federal law. *See Kellough v. Bertrand*, 22 F.Supp.2d 602, 609 (S.D.Tex.1998) ("Texas law provides government employees official immunity from suits arising from the good faith performance of their discretionary duties where they are acting within the scope of their authority. While the Texas doctrine of official immunity is distinct from the federal doctrine of qualified immunity, the state doctrine differs in no ways that would provide an outcome in this case different than that provided by the federal doctrine.") (citations omitted). "To enjoy the benefit of official immunity [under Texas law] with respect to an action he is alleged to have taken, an officer must have been performing his discretionary duties in good faith while acting within the scope of his authority." *Id.; Wadewitz v. Montgomery*, 951 S.W.2d 464, 465–66 (Tex. 1997).

The court concludes that the defendants are not entitled to official immunity. There is sufficient evidence in the record to conclude that the defendants were not acting in good faith when they chose to no longer send their officers to classes taught by the plaintiffs. No reasonable officer in the defendants' position could have thought that boycotting the plaintiffs' business was justified by the fact that the plaintiffs exercised their First Amendment rights by testifying in a suit at least 430 miles away[7] from the Academy in which they taught.

ate circumstances a claim of qualified immunity may be submitted to a jury in its entirety. *See also Goodson v. City of Corpus Christi*, 202 F.3d 730, 739 (5th Cir.2000) (affirming a denial of summary judgment because genuine issues of material fact existed as to whether police officers had an objectively reasonable belief that an individual fit the description of a criminal suspect). Some district courts in this circuit have followed this line of reasoning and submitted the question of objective reasonableness to a jury. *See Brown*, 1999 WL 1243057 at *4 ("This court cannot assess on summary judgment whether Officer Di-

Marco's actions were reasonable, making summary judgment inappropriate.").

7. The court takes judicial notice that the distance from Kilgore, Texas to Kerrville, Texas is approximately 438 miles. For comparison, the distance from where this court sits the majority of time in Beaumont, Texas to New Orleans, Louisiana is 261 miles. The distance from Kilgore to New Orleans is 404 miles. The distance from Boston, Massachusetts to Washington, D.C. is 446 miles. The distance from Columbus, Ohio to St. Louis, Missouri is 420 miles. This court fails to see how a

The defendants have also maintained that the justification defense precludes the plaintiffs' claims for tortious interference. In order to establish this defense, the defendants must show that they (1) exercised their own legal rights, or (2) had a good faith claim to a colorable legal right, which ultimately proves to be mistaken. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex.1996). The defendants argue that they were exercising their own rights under the First Amendment by speaking out about their concerns of a conflict of interest. However, when all the evidence is construed in favor of the plaintiffs as it must at this stage of the litigation, it is clear that this defense is a question of fact for the jury to decide.

### C. The Municipal Defendants

█ Each of the plaintiffs' claims against the city and county defendants require the plaintiffs to establish that they were deprived of constitutional rights by the official policy or custom of the municipality. *See Monnell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This can be done by pointing to the fact the individual defendants in this case are the policy makers of their respective municipalities. *See id.; Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). There is little doubt that the individual defendants are the policy makers of their respective municipalities. The individual defendants are all the heads of the defendant law enforcement agencies. The individual defendants are responsible for establishing policies in their departments absent a contrary mandate from a legislative body. In *Pembaur*, the Supreme Court held that municipalities are liable under § 1983 when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* The individual defendants in this case chose to no longer send their officers to classes taught by the plaintiffs. This deliberate choice established a municipal policy. Thus, the court concludes that the individual defendants were the policy makers for their respective departments and the municipal defendants are not entitled to summary judgment.

## IV. CONCLUSION

Plaintiffs' evidence reflects a dogged determination by the defendants to rid Kilgore College of the plaintiffs as instructors in retaliation for speaking out about excessive force by police officers. The court concludes that the acts alleged in the complaint and found in the record, if proven at trial, would violate "clearly established" law. The court cannot tell at this stage of the case, where the evidence must be viewed in the light most favorable to the plaintiffs, whether the defendants acted in an objectively reasonable manner. Whether the plaintiffs can prove their allegations at trial given defendants' contrary evidence is another matter, left to be decided during a trial consistent with this opinion. For the foregoing reasons, the Defendants' Joint Motion for Summary Judgment is DENIED. Moreover, the defense of qualified immunity does not prevent this case from moving to trial.

police officer from Columbus, Ohio testifying in St. Louis could possibly be a conflict of interest. The same goes for an officer from Boston testifying in our nation's capitol.