**UNITED STATES of America, Plaintiff,**

v.

**Aidse MALDONADO–NORAT, Edmundo R. Cid–Nieves, Walter Martin Soto–Leon, Jose E. Jimenez–Tirado, Maria Mari–Narvaez, Camile Roldan, Santos Santiago, Humberto Trias, Wanda Liz Vega–Davila, Carlos Lorenzo Weber, Defendants.**

**Nos. 00–426 HL, 00–436 HL, 00–444 HL, 00–471 HL, 00–484 HL, 00–490 HL, 00–492 HL, 00–494 HL, 00–498 HL, 00–499 HL, 00–501 HL.**

United States District Court, D. Puerto Rico.

Nov. 30, 2000.

Edgardo L. Rivera–Rivera, San Juan, PR, for Aidse Maldonado–Norat, Mario Roche–Velazquez, Jose E. Rivera–Robles, defendant.

Jose L. Barreto, San Juan, PR, for Edmundo R. Cid–Nieves, Mario Roche–Velazquez, Jose E. Rivera–Robles, defendant.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Defendants are a group of reporters charged in an information with one count of knowingly and unlawfully going upon the Camp Garcia Naval Installation at Vieques, Puerto Rico in violation of 18 U.S.C. § 1382. They have filed a Motion for Summary Dismissal of Defendants' Information. In their motion, they argue that their arrest violates their rights under the First Amendment to the United States Constitution and that their presence on Camp Garcia is not covered by the language of 18 U.S.C. § 1382.

### I. The First Amendment

Defendants' argument under the First Amendment boils down to the following: Because Defendants are members of the press and were on Camp Garcia solely in their capacity as members of the press and not as protesters, their arrest violates the freedom of the press guaranteed by the First Amendment. Defendants go on to

acknowledge that "the First Amendment does not afford the press a constitutional right of special access to the [sic] information not available to the public," but they argue that "special circumstances" require that members of the press be immune from arrest and prosecution for going onto Camp Garcia.

Because the First Amendment neither immunizes trespassers nor creates any special status for reporters who violate penal statutes, Defendants' argument must fail. While the Court is sympathetic to Defendants' unassailable premise that "a truly free press" is essential to the preservation of a just and free society, this premise only carries Defendants so far. Unfortunately for Defendants, ample Supreme Court precedent makes it pellucid that the foundational principle of freedom of the press does not support the edifice that Defendants here attempt to construct: freedom of the press to violate the law.

It is undeniable that the federal judiciary has been at the forefront in safeguarding the freedom of the press. *See, e.g., Hustler Magazine v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988); *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); *Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Emerito Estrada Rivera–Isuzu de P.R., Inc. v. Consumers Union of United States, Inc.,* 233 F.3d 24 (1st Cir.2000); *El Dia, Inc. v. Rossello,* 165 F.3d 106 (1st Cir.1999). A sizable body of case law from the Supreme Court and from circuit courts stands opposed to the arguments advanced by Defendants in their motion to dismiss. In *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Supreme Court faced the issue of whether, in light of the First Amendment's protection of freedom of the press, reporters could be forced to respond to subpoenas and identify their sources. In deciding in the affirmative, the Supreme Court declared that "[i]t is clear that the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability." *Branzburg,* 408 U.S. at 682, 92 S.Ct. 2646. Using language that has been cited in numerous subsequent cases, the Supreme Court went on to hold that "the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Id.* at 684, 92 S.Ct. 2646.[1]

In the instant case, Defendants seek immunity from prosecution for the violation of a criminal statute of general applicability precisely on the ground that Defendants have a constitutional right of special access to information not available to the public generally. Further, the Court does not share Defendants' view that "special circumstances" require the Court to ignore overwhelming precedent that runs contrary to Defendants' assertions.

Two years after *Branzburg,* the Supreme Court entertained a First Amendment challenge to a California penal regulation that prohibited members of the press from conducting interviews with "specific individual inmates." *Pell v. Procunier,* 417 U.S. 817, 819, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). In upholding the restrictions imposed by the regulation, the Supreme Court again pointed out that "[t]he First and Fourteenth Amendments bar government from interfering in any way with a free press. The Constitution does not, however, require government to

---

1. Just last year, in *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), the Supreme Court reaffirmed the notion that freedom of the press has limits. In that case, the Court rejected arguments that members of the press have a constitutional right to be present when the police execute arrest warrants in private homes. In such instances, the Court held, the demands of the Fourth Amendment outweigh society's interest in the press' access to information.

accord the press special access to information not shared by members of the public generally." *Id.* at 834, 94 S.Ct. 2800. The Supreme Court further noted that "there are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow." *Id.* at 834 n. 9, 94 S.Ct. 2800. Restrictions like § 1382's prohibition on trespass on a military installation are superficially susceptible to attack by "ingenious argument," but they are not violative of the First Amendment.

Finally, the circuit courts have consistently applied Supreme Court precedent in this area. In *JB Pictures, Inc. v. Department of Defense,* 86 F.3d 236 (D.C.Cir. 1996), the United States Court of Appeals for the District of Columbia upheld as consistent with the First Amendment a Department of Defense policy allowing families of soldiers killed abroad to prevent members of the press from attending the return of soldiers' bodies to the United States. In the course of its opinion, the circuit court reaffirmed that "First Amendment rights to 'freedom of speech, [and] of the press' do not create any per se right of access to government property or activities simply because such access might lead to more thorough or better reporting." *JB Pictures,* 86 F.3d at 238.

Still more recently, the United States Court of Appeals for the Sixth Circuit found that a city government's refusal to give a journalist access to the city's parking ticket records in electronic form did not violate the First Amendment. *See Putnam Pit, Inc. v. City of Cookeville, Tenn.,* 221 F.3d 834 (6th Cir.2000). In its opinion, the circuit court relied on the oft-quoted language of *Branzburg* that "[t]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Id.* at 840.

Given the controlling precedent that runs directly counter to Defendants' arguments regarding the reach and meaning of the First Amendment, the Court is compelled to deny Defendants' motion to dismiss on First Amendment grounds.

## II. The Trespass Statute

Defendants' statutory arguments require substantially less discussion. Defendants concede that they were arrested on Camp Garcia. Further, they concede that the only state-of-mind requirement under ¶ 1382 is that one must have had "notice of the prohibition of entry upon the military reservation." Defendants' Motion for Summary Dismissal at 6 (citing *United States v. Parrilla Bonilla,* 648 F.2d 1373, 1378 (1st Cir.1981)). Defendants wisely do not attempt to argue that they had no notice of the prohibition on unauthorized entry onto Camp Garcia. Instead, they argue that § 1382's state-of-mind requirement can never be satisfied when one's purpose for entering onto military property is to engage in "constitutionally protected action," such as journalism. This argument does not carry the day for the same reason that Defendants' primary First Amendment argument is flawed. Accordingly, the Court shall not expand upon the discussion contained in the First Amendment section of this Opinion and Order.

There is one last arrow in Defendants' quiver. They argue that their actions do not satisfy § 1382's prohibition on reentry. The short answer to this argument is that Defendants are simply not charged with a reentry count under § 1382.[2] Accordingly, Defendants' argument is misplaced.

**2.** The information reads, "[o]n or about June 22, 2000, in the District of Puerto Rico and within the jurisdiction of this Court, that is, on Camp Garcia Naval Installation at Vieques, Puerto Rico, that is, on lands reserved for the exclusive jurisdiction of the United States, ... defendant, did knowingly and unlawfully go upon said Naval installation for any purpose prohibited by law or lawful regulation, that is, 32 CFR Section 770.35 through 770.40, without first having obtained permission from the Commanding Officer as required by the aforesaid regulations. All in violation of Title 18, United States Code, Section 1382."

WHEREFORE, Defendants' motion to dismiss is hereby denied.

**IT IS SO ORDERED.**