# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

———————

No. 98-2142 MN

———————

John C. Reed,                              *
                                           *
            Appellant,                     *
                                           *
     v.                                    *        Appeal from the United States
                                           *        District Court for District of
ULS Corporation, et al.,                   *        Minnesota.
                                           *
            Appellees.                     *

———————

Submitted:   March 12, 1999
Filed:  May 28, 1999

———————

Before BEAM and HEANEY, Circuit Judges, and FENNER,[1] District Judge.

———————

FENNER, District Judge.

     Appellant, John Reed, appeals the District Court's grant of summary judgment on his claim of negligence against appellee, ULS Corporation (ULS).  Reed is a longshore worker who was employed by American Grain Trimmers.  In November of 1995, American Grain Trimmers had a contract to load grain onto a vessel owned by

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

ULS. As Reed was walking down the vessel's gangway, a step on the gangway gave way causing Reed to fall and injure himself.[2]

On appeal, Reed argues that there are genuine issues of material fact that preclude summary judgment and that considering the facts in the light most favorable to him, supports his theory that ULS was negligent. Specifically, Reed argues that ULS failed to conduct a reasonable inspection which would have revealed the defect in the step that caused his injury. ULS argues that the record is insufficient to establish that it was negligent.

## STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, Summary Judgment is mandated where depositions, discovery responses and affidavits show that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727-28 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).

---

[2]ULS concedes that Reed was injured for purpose of summary judgment consideration.

# FACTS

The record reveals that the vessel in question was equipped with a gangway on each side of the vessel. The gangways were stowed vertically off the side of the vessel's deck when not in use. On the day in question the vessel docked at approximately 4:00 a.m. and the gangway in question was swung into place to allow passage to and from the dock. When the gangway was put in place, it was inspected visually from the vessel and walked on to determine if there was anything unusual. No problems were observed. At 8:00 a.m., on the day in question, appellant, Mr. Reed, and five other longshoremen boarded the vessel via the gangway; they encountered no problems with the gangway. Loading of the vessel began at approximately 9:00 a.m., and the gangway continued to be used by vessel crew members and others. At approximately 12:50 p.m., Mr. Reed fell while using the gangway when the eighth step from the bottom failed. A subsequent inspection revealed that the two pins which hold the step in a horizontal position when the gangway is in use were missing. Only if both pins are missing will a step fail by moving from a horizontal to a vertical position when the gangway is extended to the dock for use.

The gangway is made of heavy aluminum with 29 steps and a top and bottom platform. A threaded hole and axle on each end of the step bolts every step along its centerline to the gangway. This allows each step to turn along its centerline. Each step also has unthreaded holes, or ears, at the underside of both back corners. Each ear is pinned to an angle iron that runs the length of the gangway under each of the steps. The pins, which are slip fit, are held in place by keeper wires through holes drilled in the ends of the pins. The pins are 1 ½ inches long and 5/6 inch wide. The pins are made out of aluminum, and the bushings that fit on the pins are one inch long. The upper end of each angle iron is hinged to the gangway's top platform, creating a mechanical linkage that changes the angle of the steps to keep them level as the angle of the gangway changes during loading.

LEGAL ANALYSIS


The Longshore and Harbor Workers' Compensation Act as amended in 1972, is controlling in this cause. Pursuant to 33 U.S.C.A. § 905(b), the Act provides as follows:


> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party in accordance with the provisions of §933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly . . . .

> The liability of the vessel under the subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

"Unseaworthiness," a form of strict liability, had until 1972 also been a longshoreman's remedy. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872 (1946).


Although Section 905(b) abolished a longshoreman's right to recover for unseaworthiness, it did not specify the acts or omissions of the vessel that would constitute negligence. *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 165, 101 S.Ct. 1614, 1621 (1981). The contours of a vessel's duty to longshoremen were left to be resolved through the application of accepted principles of tort law and the ordinary process of litigation. *Id*. at 165-166, 101 S.Ct. at 1620-1622.


In *Scindia*, the Supreme Court outlined the three general duties vessel owners owe to longshoremen. The first, which courts have come to call the "turnover duty," relates to the condition of the vessel upon the commencement of stevedoring

operations.[3]  *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98, 114 S.Ct. 2057, 2063 (1994), (citing *Scindia Steam Nav. Co. v. De los Santos,* 451 U.S. 156, 167, 101 S.Ct. 1614, 1622 (1981)).  The second duty, applicable once stevedoring operations have begun, provides that a vessel owner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the "active control of the vessel." *Id.*  The third duty, called the "duty to intervene," concerns the vessel's obligations with regard to cargo operations in areas under the principal control of the independent stevedore. *Id*.

The duty to intervene is not implicated here and under both the turnover and active control duty the vessel owes the stevedore the duty to exercise due care under the circumstances.  *Scindia*, 451 U.S. at 166, 101 S.Ct. at 1622.  The duty to exercise due care extends at least to exercising ordinary care under the circumstances in order that the vessel and its equipment are in such condition that an expert and experienced stevedore will be able, by the exercise of reasonable care, to carry on cargo operations with reasonable safety to persons and property.  *Id*. at 166-67, 101 S.Ct. at 1622.  The duty to exercise ordinary care also requires that a warning be given to the stevedore of any hazards on the vessel or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.  A vessel owner has a duty, with respect to the condition of the vessel's gear, equipment, tools, and work space, to be used in the stevedoring operations; and if he fails at least to warn the stevedore of

---

[3]In *Scindia*, the Supreme Court references the company that contracted with the vessel owner to load the vessel as the stevedore and the stevedore's employees as longshoremen. *Scindia*, at 156-57; 101 Sct. 1616.  However, the terms "stevedore" and "longshoreman" seem to be used interchangeably in the text of the Supreme Court's opinion in *Scindia*.  Webster's Dictionary defines both "stevedore" and "longshoremen" as workers who load and unload vessels. Webster's II, New College Dictionary.

hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if such breach causes injury to a longshoreman. *Id*. A vessel may also be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation. *Id*.

Thus, in accordance with the holding of *Scindia*, plaintiff must show in the case at bar that in the exercise of reasonable care that ULS knew or should have known of the defective condition of the gangway step that failed. In this regard, Reed argues that ULS had an obligation in the exercise of reasonable care to inspect the underside of the gangway and that if ULS had done so it would have been able to detect a defective condition in the step. The record reflects that the inspection of the gangway by ULS was reasonable under the circumstances here and that even if ULS had inspected the underside of the gangway it would not necessarily have determined that a defect existed.

ULS conducts a monthly inspection of the vessel in question including the gangway. The monthly gangway inspection is conducted while the vessel is underway and does not entail observation of the underside of the gangway. The underside of the gangway was not inspected prior to Reed's accident. When the gangway is not in use, it is stowed vertically on its side in a cradle located on the edge of the deck of the vessel. In this position, the underside with the mechanical linkage faces away from the deck. However, both when the gangway is stowed and when it is in use, at least some of the pins can be visually observed. When the gangway is stowed, a person can lean out from the deck to conduct at least a partial inspection and when the gangway is in use, the underside of the gangway can be viewed from the dock. Nonetheless, even if all of the pins and wires could be visually observed from either the deck of the vessel or the dock, there would be no way to determine the structural integrity of the pins or wires by such an inspection.

In addition to the monthly inspection, the gangway at issue was inspected when it was placed in use by vessel's crew visually observing the gangway from the topside by looking down from the vessel's deck to determine that everything seen was in order. Additionally, a crew member walked the gangway when it was lowered to the dock to determine there were no problems. There is nothing to indicate that such an inspection constitutes a failure to exercise reasonable care under the circumstances of this case.

A vessel owner's duty is measured by the standard of ordinary care among vessel owners. *Morris v. Compagnie Maritime Des Charguers*, 832 F.2d 67, 69 (5th Cir. 1987).[4] The record reflects that the inspection of the gangway by ULS was reasonable for the shipping industry. Visual inspection of the top side of the gangway and actually walking the gangway when it was in place were considered safe means of inspection as supported by the record. Reed merely argues that ULS had a duty to conduct a more detailed inspection but provides nothing to support his argument other than evidence that a step failed and he fell.

ULS was never placed on notice of a potential problem with the gangway. No problems had ever been experienced with the gangway nor had any loose pins or wires been observed on the deck of the vessel or the dock at any time before Reed's accident. Additionally, the record contains testimony from two separate seamen, each with approximately thirty years of experience in shipping involving many vessels equipped with gangways, that they had never experienced a gangway step failure. Furthermore, there is nothing in the record before us to show whether the failure was caused by a missing pin, structurally deficient pins, or worn or otherwise deficient wires. The pins and wires were not found after the accident so the exact cause of the step failure was not able to be determined. Even if the inspection that Reed argues should have been

---

[4]In *Scindia*, the Supreme Court measures ordinary care in light of an expert and experienced stevedore and the vessel owner's knowledge of the vessel as well as the stevedore's duties. *Scindia*, 451 U.S. at 166-67, 101 S.Ct. at 1622.

conducted was, a structurally deficient pin or a worn or deficient wire would not have been discovered. Under the circumstances here, ULS had no duty to conduct such a detailed inspection.

The judgment of the District Court is affirmed.

HEANEY, Circuit Judge, dissenting.

Reading the record in the light most favorable to Reed, his theory of recovery is that a pin and wire were missing from the gangway, leaving only a single pin and wire holding the step in place. When Reed reached the defective step, the remaining pin and/or wire broke,[5] causing the step to give way, resulting in Reed's injury. The Supreme Court noted in Scindia Steam Navigation Co. v. De los Santos, 451 U.S. 156, 166 (1994), that vessel owners have a duty of exercising due care "under the circumstances." In my view, these circumstances require vessel owners periodically to inspect a gangway for missing bolts and pins and a reasonable jury could conclude that ULS breached this duty.

If a pin or wire were in fact missing from a step in the gangway, a reasonable conclusion is that it should be replaced before the remaining pin and wire securing the step breaks. Rather than adequately determining the structural soundness of the gangway, however, a ULS inspection of a deployed gangway was limited to the actual use of the gangway and to a cursory visual inspection which was incapable of revealing whether all pins or wires were intact:

> These particular pins or bolts which were missing are extremely difficult to see, and even if you look up under the step you can only see the washer and cotter key, and not the portion of the bolt or pin which passes through

---

[5]An equally plausible theory is that the remaining bolt or pin became loose through wear and inattention from the vessel owners and fell out.

the ladder framing. If the bolt or pin broke in the area passing through the framing, *there is no way one could see it.* The same would apply if the gangway were in stowed position on deck, since the bottom sides of the steps face outboard. The best way, and for all practical purposes the only way, to properly examine the steps is by using them, which is always done by the ordinary seamen when they re-board the vessel immediately after mooring and the gangway has been put in place.

(Jt. App. at 25-26 (emphasis added).) As for inspections of non-deployed gangways, they are similarly ineffective at determining whether the gangway is missing pins or wires in that a ULS employee would "lean over the top of the gangway, which is about at chest level, crane [one's] neck out, and [] look over and down at the folded up mechanism." (Jt. App. at 56-57.)

Notwithstanding the fact that ULS had not inspected the underside of the gangway–the only place where similar defects would manifest themselves–before Reed's accident, the majority concludes that because "at least some" of the pins can be visually observed in the course of ULS's standard inspection practices and because those practices comport with the practices of other vessel owners, there is no breach of duty. I cannot accept that ULS satisfied its duty as a matter of law by its profoundly limited effort to determine the safety of the gangway in this case. While the specifics of a legally sufficient inspection will differ in each case, there can be no doubt that the duty of ULS involved more than a cursory visual inspection of the gangway at 3 a.m., use of the deployed gangway, and occasional and incomplete inspections when the gangway was not deployed. At the very least, ULS was required periodically to inspect the gangway to insure that there were no missing pins or wires.

Because ULS admits that it fell far short of insuring that there were no missing pins or wires in the gangway, a reasonable jury could conclude that ULS breached its duty. Because summary judgment was therefore inappropriately granted, I respectfully dissent.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.