**Peggy DEAN, Sheryl Wieskamp, and Carolyn Ahlstrom, Plaintiffs,**

**v.**

**MUSCATINE COUNTY, Roger Eichelberger, Muscatine Co. Board of Supervisor, Richard Marr, Muscatine Co. Board of Supervisor, David Watkins, Muscatine Co. Board of Supervisor, Michael Johannsen, Director of Muscatine County Central Point of Coordination and Rescare, Inc., Defendants.**

No. CIV.3–01–CV–10092.

United States District Court,
S.D. Iowa,
Davenport Division.

Feb. 24, 2003.

Dorothy A. O'Brien, O'Brien & Greve, Davenport, IA, for Plaintiffs.

Bruce L. Walker, Phelan Tucker Boyle & Mullen, Iowa City, IA, Michael R. Brown, Fairfield, IA, for Defendants.

## ORDER

LONGSTAFF, Chief Judge.

The Court has before it a motion for summary judgment, filed September 13, 2002[1] by defendants Muscatine County;

---

1. The County defendants filed amended summary judgment papers on September 17,

Roger Eichelberger, Muscatine County Board of Supervisor; Richard Marr, Muscatine County Board of Supervisor; David Watkins, Muscatine County Board of Supervisor; and Michael Johannsen, Director of Muscatine County Comunity Services and Muscatine County Central Point of Coordination (collectively, the "county defendants."). Plaintiff resisted the motion October 22, 2002, and a telephonic hearing was held before the undersigned on February 18, 2003. The motion is fully submitted.

## I. BACKGROUND

The following relevant facts either are not in dispute or are viewed in a light most favorable to plaintiffs.[2] At all times relevant to this action, defendants David Watkins and Roger Eichelberger were members of the Muscatine County Board of Supervisors ("the Board"). Defendant Michael Johannsen was the director of Muscatine County Community Services Central Point of Coordination ("CPC"). Defendant Richard Marr became a Board member on January 1, 2001.

Prior to their collective terminations on April 30, 2001, plaintiffs were employed by Muscatine County in the following capacities: 1) Peggy Dean was administrator of Muscatine County Residential Services ("MCRS"), a residential care facility for persons with disabilities; 2) Sheryl Wieskamp was assistant administrator of MCRS; and 3) Carolyn Ahlstrom was coordinator of the MCRS "day treatment" program, which also served disabled individuals.

### A. Negotiations Process

During the 1990s, the federal government mandated that health facilities for the disabled housing more than fifteen residents be operated by private agencies in order to receive Title 19 funding. After studying the issue, Muscatine County officials determined that because many residents of MCRS could qualify for Title 19 funding, privatization of the Residential Services program could save the county approximately $300,000 per year.

On November 22, 1999, a Muscatine-based nonprofit organization, Crossroads, Inc., approached County officials about operating Residential Services. In its first communication with the County, Crossroads indicated it had been in contact with Ms. Dean, and was impressed with her plan to downsize the number of residents at the facility and to allow for alternative care.

Meanwhile, all three plaintiffs took public stands regarding the County's upcoming plans for privatization of mental health care services. For example, each plaintiff specifically criticized a proposed plan under which the care provider would receive a bonus from the County for each disabled person who was discharged from regular care and moved into independent living. Ms. Ahlstrom wrote frequent letters to the editor of the *Muscatine Journal,* voicing her opinion that Crossroads was the preferable provider for residential housing for the disabled, and that defendant Johannsen had a conflict of interest in serving as guardian, payee and case management director for many disabled persons. The

2002.

**2.** The County defendants attempted to respond to plaintiffs' statement of additional facts on February 17, 2003. Pursuant to Local Rule 56.1(d), however, this response was due five (5) court days from the date of service of plaintiffs' statement of additional material facts, which was filed in October 2002. Accordingly, the county defendants' latest response is untimely and stricken from the record. The facts set forth in plaintiffs' statement of additional facts-to the extent relevant to plaintiffs' claim-are deemed admitted.

plaintiffs believed there was substantial and unnecessary duplication of services among county agencies and those serving the county.

Ms. Dean and Ms. Wieskamp wrote several letters to the County supervisors and Mr. Johannsen, and in January 1999 urged them to appoint a non-partisan facilitator to the Mental Health Strategic Planning Task Force and to separate administration and service providers. Ms. Dean and Ms. Wieskamp created and presented a Power Point presentation for the supervisors and other community groups in which they promoted Crossroads' takeover of the MCRS facility.

Mr. Johannsen and Mr. Eichelberger responded negatively to plaintiffs' public statements and suggestions, as well as those made by Crossroads Director Sharon Barnhart. Ms. Barnhart tried to discuss the duplication of services with Mr. Johannsen, but received no response. Mr. Johannsen told Ms. Dean he considered her January 1999 communication insulting, and warned Sharon Barnhart not to be seen entering public meetings with Ms. Dean. Ms. Barnhart stated in deposition that during Board meetings on the issue, Mr. Eichelberger had been unduly abrupt with Ms. Dean, which Ms. Barnhart considered humiliating. On separate occasions, Mr. Eichelberger indicated to Ms. Dean and Ms. Weiskamp that if they didn't "call off" Ms. Esther Dean, a fellow county supervisor who supported Crossroads, Mr. Eichelberger would "bring in a big-for profit operator" to administer the care services program.

Mr. Eichelberger also publicly demeaned Ms. Ahlstrom. In July 2000, he wrote a guest column for the *Muscatine Journal,* and mentioned a Letter to the Editor written by Ms. Ahlstrom. Mr. Eichelberger stated in his column that Ms. Ahlstrom had deceived the public by not identifying herself as a county employee.

On June 26, 2000, the Board issued a Request for Proposal ("RFP"). Both Crossroads and ResCare, Inc. ("ResCare"), a for-profit company, submitted bids to operate the residential care facility. Crossroads made it public that it intended to retain all of the MCRS administrative staff, including Ms. Wieskamp and Ms. Peggy Dean, albeit not necessarily in their former positions. The same could not be said of ResCare. In their October 2000 response to the RFP, ResCare stated it would "interview and hire administrators based on assessment of an applicant's abilit[y] to lead. Our experience has shown that key positions which provide leadership in the transition to delivery of ResCare services, is best met by an individual or individuals whose values are grounded in ResCare's mission, principles and vision." Plaintiffs' App. at 269.

It is important to note that neither Crossroads nor ResCare submitted a bid to operate the Day Treatment Program. In November 2000, the Supervisors voted to transfer the Day Treatment Program to the County Program Services Division, headed by Mr. Johannsen.

By the November 6, 2000 Board meeting at which the responses to the RFP were considered, Supervisors Esther Dean, Sandy Huston and John Oberhaus had made it clear they supported Crossroads. The supervisors voted 4–0, apparently with one absence, to begin negotiations with Crossroads. Following the vote, Mr. Eichelberger went out into the hallway and informed a group of ResCare officials that it wasn't over yet, and that "this is just something we have to go through and we will be back to you." Plaintiffs' App. at 283.

The negotiations process with Crossroads did not go well. Ms. Barnhart alleged Mr. Johannsen refused to give her budget figures that should have been

public information, and failed to keep her informed of the negotiations process. Supervisor Oberhaus believed that Mr. Eichelberger, who was on the negotiating team, cut him out of the process. Crossroads Board President Phil Fitzgerald believed that the actions of Mr. Johannsen and the negotiations team suggested they did not want the contract with Crossroads.

In mid February 2001, Mr. Johannsen attended his first negotiating session with Crossroads, and informed Crossroads representatives that the County would pay only based on the current census of 52 residents, not 68 residents as had been stated in the RFP. He further indicated that if the census went below 52 residents, the County would not be responsible. Under the numbers presented by Mr. Johannsen, Crossroads estimates it would have lost at least $274,000 in its first year operating the residential facility.[3]

Crossroads contacted the Board of Supervisors following the February 2001 meeting and indicated they felt negotiations were at an impasse. Although they soon indicated a willingness to reopen negotiations, the Board of Supervisors voted 3–2 in March 26, 2001 to begin negotiations with ResCare. An agreement was reached with ResCare in approximately 30 days.

### B. Plaintiffs' Termination from Employment

On April 30, 2001, in accordance with its contract with ResCare, the County terminated all MCRS employees, including all three plaintiffs. Although none of the plaintiffs were rehired by ResCare, none of the plaintiffs expressly applied to work for ResCare, either. The evidence also

shows that plaintiffs were not the only MCRS employees who were not hired by ResCare.

Ms. Ahlstrom was not hired in a consulting or employment capacity by the Program Services Division when the Day Treatment Program was transferred to that division. Mr. Johannsen and his assistant Nancy Nauman ignored many communications from Ms. Ahlstrom regarding her program.

Meanwhile, Ms. Ahlstrom made it public that her husband was planning to retire July 1, 2001, and that they were building a home in Story County. Ms. Ahlstrom stated in deposition that she had discussed the option of continuing to serve as a consultant for the Day Treatment Program with Ms. Dean and Ms. Wieskamp.

Ms. Ahlstrom applied for retirement benefits as of April 30, 2001, and moved to Story County in July 2001. She denies that she ever intended to stop working altogether, however.

Plaintiffs filed the present complaint on July 20, 2001. Count I implicitly sets forth a cause of action under 42 U.S.C. § 1983, alleging the County defendants unlawfully retaliated against plaintiffs for exercising their First Amendment rights. Count II alleges the "defendants" conspired with ResCare to deprive plaintiffs "of their positions" for speaking out publicly on the privatization issue. Count III claims defendants Johannsen, Eichelberger, Marr and Watkins tortiously interfered with plaintiffs employment contracts by causing them not to be hired/retained by the "agency providing care to disabled people of Muscatine County."

---

**3.** Mr. Johannsen also made it clear that as guardian of five of the disabled persons currently residing in the residential facility, he would be moving these persons to another facility, which would further reduce the census during Crossroads' first year of operation.

## C. APPLICABLE LAW AND DISCUSSION

### A. Summary Judgment Standard

A court shall grant a motion for summary judgment only if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court must consider the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Kindred v. Northome/Indus. School Dist. No. 363*, 154 F.3d 801, 803 (8th Cir.1998), *cert. denied*, 525 U.S. 1109, 119 S.Ct. 881, 142 L.Ed.2d 781 (1999).

To preclude the entry of summary judgment, the nonmovant must make a showing sufficient to establish the existence of every element essential to the case, and on which the nonmovant has the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Reed v. ULS Corp.*, 178 F.3d 988, 989 (8th Cir.1999). When a motion is made and supported as required in Federal Rule of Civil Procedure 56(a), the adverse party may not rest upon the mere allegations or denial in his pleadings, but must set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. At the summary judgment stage, the court may not make determinations about the credibility of witnesses or the weight of the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where inconsistent inferences can reasonably be drawn from undisputed evidentiary facts, it is for a jury rather than the courts to decide which reasonable inference to draw. *Ryther v. KARE* 11, 108 F.3d 832, 845 (8th Cir.) (en banc), *cert. denied*, 521 U.S. 1119, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997).

### B. Plaintiffs' § 1983 Claim

As outlined above, count I of plaintiffs' complaint alleges: "The actions of defendants in refusing to award the contract to Crossroads, in awarding the contract to ResCare and causing the Plaintiffs not to be hired by ResCare in providing care to the disabled citizens of Muscatine County were taken in retaliation for the publicly expressed views of the Plaintiffs and violates Plaintiffs' First Amendment Right to Free Speech." Complaint at ¶ 30. In their respective summary judgment papers, both the county defendants and plaintiffs treat count I as a claim that a public employer unlawfully retaliated against its employees for exercising their First Amendment rights. Such an interpretation also is consistent with plaintiffs' allegation that "Muscatine County is a public employer which has a duty under 42 U.S.C. § 1983 not to retaliate against its employees for speaking out on matters of public concern."[4] Complaint at ¶ 8.

As summarized by the Eighth Circuit in *Hudson v. Norris*, 227 F.3d 1047, 1050 (8th Cir.2000), to establish a *prima facie* case of unlawful retaliation by a public employer for exercising First Amendment rights, an employee must demonstrate: "that he or she participated in a protected activity, that the employer took an adverse employment action against him or her, and that a causal connection existed between the protected activity and the adverse employment action." *See also Jones v. Fitzgerald*, 285 F.3d 705, 713 (8th Cir.2002).[5]

---

**4.** The County defendants do not dispute the supervisors "possessed sufficient decision-making authority for purposes of 42 U.S.C.

§ 1983." *Jones v. Fitzgerald*, 285 F.3d 705, 713 n. 6 (8th Cir.2002).

**5.** Assuming a plaintiff establishes her *prima*

In the present case, the County defendants do not dispute all three plaintiffs can establish that they were engaging in protected activity while expressing their views on the future of care for the disabled in Muscatine County. The County defendants argue, however, that none of the plaintiffs suffered an adverse employment action causally connected to the exercise of free speech. This Court agrees with the County defendants' position.

### 1. Peggy Dean and Sheryl Wieskamp

#### a. Traditional Employment Relationship

 The evidence shows Ms. Dean and Ms. Wieskamp were terminated on April 30, 2001 with all other MCRS employees-including Ms. Ahlstrom-as provided under the County's contract with ResCare. Defendants' App. at 68–72, 86. Plaintiffs have not alleged, nor is there evidence, that either Ms. Dean or Ms. Wieskamp were disciplined by the County for exercising their right to free speech. Mr. Eichelberger's rude statements and/or rude demeanor toward either woman do not rise to the level of an adverse employment action under § 1983. *See, e.g., Jones,* 285 F.3d at 714 ("Employment actions commonly considered serious enough to inflict constitutional injury include refusals to hire, refusals to promote, reprimands, demotions and discharges."). Accordingly, under the traditional, *Hudson*-style analysis of § 1983 claims, the Court finds plaintiffs Dean and Wieskamp have failed to establish a material fact with regard to a crucial element of their prima facie case.

*facie* case, "the burden shifts to the employer to articulate a non-discriminatory reason for the adverse employment action." *Hudson,* 227 F.3d at 1050. The employee may then show that the articulated reason is pretextual. *Id.*

#### b. Conspiracy theory

Count II of plaintiffs' complaint alleges the County defendants and ResCare "conspired to deprive plaintiffs of their positions in retaliation for their publicly expressed positions." Complaint at ¶ 34. The County defendants moved for summary judgment on this claim, arguing plaintiffs had failed to present evidence of a conspiracy between Muscatine County Officials and ResCare.

Nowhere under count II of the complaint do plaintiffs suggest this is anything other than a state law conspiracy claim. Furthermore, plaintiffs did not address the conspiracy claim in their resistance to defendants' motion for summary judgment, nor did either party request oral argument. It therefore would have been within the Court's authority to grant summary judgment outright on this claim.[6] *See* Local Rule 56.1(b)(1) (requiring brief submitted in resistance to summary judgment motion to respond "to each of the grounds asserted in the motion").

Due to outstanding issues with regard to the employment claim, the Court sua sponte scheduled a telephone hearing for February 18, 2003. During this hearing, the Court allowed plaintiffs' counsel to substantively address both counts II and III of the complaint. Although counsel argued vigorously in defense of the tortious interference claim (count III), she admitted she had little evidence to support the existence of a conspiracy and *expressly conceded* the conspiracy claim.

 Within hours of the hearing and without permission from the Court, counsel for plaintiffs submitted a "supplement" to plaintiffs' earlier resistance memoran-

**6.** The Court notes plaintiffs' original resistance memorandum also did not address the tortious interference claim.

dum, in which she attempts to revive the conspiracy claim by re-characterizing it as a civil rights violation under § 1983. Specifically, plaintiffs contend a private employer may be held liable for a civil rights violation upon proof the non-employer conspired with a state actor. *See Pendleton v. St. Louis County,* 178 F.3d 1007 (8th Cir.1999); *Helvey v. City of Maplewood,* 154 F.3d 841, 844 (8th Cir.1998).

Counsel's untimely submission is highly prejudicial to defendants, who were then forced to submit a hurried response to plaintiffs' supplement. Plaintiffs' February 18, 2003 document entitled "Plaintiffs' Supplement to Their Resistance to Defendants' Motion for Summary Judgment" is stricken from the record.

██ Even assuming plaintiffs' new arguments had been raised in a timely fashion, however, the Court nevertheless finds plaintiffs have failed to generate a material issue of fact as to whether a conspiracy existed. As recently summarized by the Iowa Supreme Court: " '[a] conspiracy is a combination of two or more persons *by concerted action* to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlawful.' " *Wright v. Brooke Group Ltd.,* 652 N.W.2d 159, 171 (Iowa 2002) (quoting *Basic Chems., Inc. v. Benson,* 251 N.W.2d 220, 232 (Iowa 1977)) (emphasis added). To support their "revived" conspiracy theory in the present case, plaintiffs cite to the fact ResCare responded to the County's Request for Proposal by making it fairly apparent they would not retain the existing facility administrators, as well as the fact Mr. Johannsen told Ms. Barnhart, the head of Crossroads, he did not like her politicking or attending board meetings. *See* Plaintiffs' Statement of Additional Facts ¶¶ 55, 59, Plaintiffs' App. at 80, 268–72. They also cite to the testimony of ResCare's CEO, John Kuster, in which he admits to a "difference in approaches to

providing service" between ResCare and the current MCRS administration. Plaintiffs' App. at 32.

No reasonable jury could find that these facts supported a "meeting of the minds." That Mr. Eichelberger, and arguably, Mr. Johannsen, supported an organization they knew would not hire plaintiffs in no way suggests either man made or even attempted to make an agreement with ResCare/Kuster regarding any of the plaintiffs' potential employment with ResCare.

The Eighth Circuit cases cited by plaintiffs in support of their conspiracy theory, *Pendleton v. St. Louis County,* 178 F.3d 1007 (8th Cir.1999), and *Helvey v. City of Maplewood,* 154 F.3d 841, 844 (8th Cir. 1998), are clearly distinguishable. In both cases, the plaintiffs alleged that the respective public agency defendants affirmatively contacted the plaintiffs' direct employers and urged the employer to discipline and/or terminate plaintiffs. *See Pendleton,* 178 F.3d at 1009 (plaintiffs alleged that director of administration for St. Louis County contacted plaintiffs' employers and requested discipline or termination after discovering plaintiffs sent anonymous fax criticizing county for engaging in nepotism); *Helvey,* 154 F.3d at 843 (plaintiff alleged that city manager demanded that plaintiff's employer terminate her for testifying in a civil rights action filed against the city, and threatened· that if plaintiff was not terminated, city manager would close employer's bar or revoke its liquor license). The Fifth and Tenth Circuit cases cited by plaintiffs are equally distinguishable. In *Kinney v. Weaver,* 111 F.Supp.2d 831, 838 (E.D.Tex. 2000), *aff'd in part,* 301 F.3d 253, 269–70 (5th Cir.2002), evidence showed the defendant police chiefs threatened private police academy instructors who had served as expert witnesses in police brutality cases, and then expressly ordered departmental employees not to attend their

classes. The district court found a direct, causal connection between the plaintiffs' exercise of free speech and the demotion and cut in pay they experienced following a drop in the number of students.

The remaining case cited by plaintiffs, *Worrell v. Henry*, 219 F.3d 1197, 1200 (10th Cir.2000), involved the *rescission* of a position on a local drug task force administered by the district attorney. As with *Pendleton and Helvey*, evidence was presented the employer withdrew the offer of employment upon pressure from other agents concerned about testimony plaintiff had given in an earlier murder trial. *Id.* at 1200. In the present case, although Mr. Eichelberger and Mr. Johannsen may have publicly demeaned and even threatened plaintiffs Dean and Wieskamp, there is no evidence either man contacted ResCare or exerted pressure on ResCare not to hire the two women. Any causal link is further weakened by the fact neither Ms. Dean or Ms. Wieskamp in fact applied for a position with ResCare. Accordingly, summary judgment is granted in favor of the County defendants on counts I and II of plaintiffs' complaint.

### 2. Carolyn Ahlstrom

#### a. Count I

As outlined above, Ms. Ahlstrom worked for Muscatine County as the Day Treatment Coordinator until April 30, 2001, the date specified in the contract with ResCare for termination of all persons then employed by Muscatine County Residential Services. Defendants' App. at 68–72.

Neither Crossroads nor ResCare made a bid to operate or negotiated for the Day Treatment Program. Defendants' App. at 40–41, 81. Rather, in November 2000, the County Supervisors voted to transfer the Day Treatment program to the Public Services Division, which is headed by Mr. Johannsen. Plaintiffs' App. at 67.

Ms. Ahlstrom cites to several instances of rudeness toward her on the part of Mr. Eichelberger and Mr. Johannsen. The fact Mr. Eichelberger publicly demeaned Ms. Ahlstrom in his *Muscatine Journal* guest column is alone insufficient to establish a causal connection between Ms. Ahlstrom's public statements and her failure to be transferred to the Program Services Division.

Likewise, Mr. Johannsen's failure to respond to Ms. Ahlstrom's e-mails is also insufficient to establish a causal connection. *See* Plaintiffs' App. at 8, 207–208, 357, 358. None of the e-mail communications sent by Ms. Ahlstrom to Mr. Johannsen and County employee Nancy Shreiber makes a specific request for an employment or consulting relationship. *Id.* at 207–08, 358. In fact, only one of the four e-mails submitted even asks for a direct response from either individual. *See id.* at 207. The remaining three simply berate the county. *See id.* at 208, 358–57.

Rather, the evidence shows a transfer to the Program Services Division was not even possible due to a lack of funding. Plaintiffs' App. at 64. Mr. Johannsen stated in deposition that the Day Treatment program was operated by then-existing Program Services employees, with no additional persons hired to assist them, and plaintiffs have presented no evidence to refute this statement.

In addition, Ms. Ahlstrom admits in her deposition that because her husband planned to retire in July 2001 and move to Story County, "her choices were somewhat directed." Defendants' App. at 8. Although she contends she would have *liked* to serve as a consultant for the program had Crossroads obtained the County contract, *see id.*, there is no evidence she discussed her plans with anyone other than Sharon Barnhart or Peggy Dean. *Id.* at 8–9.

In conclusion, the Court finds as a matter of law that Ms. Ahlstrom's ambiguous inquiries regarding a position for which funds were not available-and which she arguably could not have accepted due to her plans to move to Story County-do not amount to an adverse employment action of constitutional proportions. Even assuming the failure to be retained as a County consultant constitutes an adverse employment action in a § 1983 context, there is no evidence Ms. Ahlstrom communicated her desire to serve in this capacity to any of the County defendants or another individual with decisionmaking capacity. Summary judgment is granted with regard to Ms. Ahlstrom's claims under count I of the complaint.

b. Count II

As set forth above, during the February 18, 2003 telephonic hearing, counsel for plaintiffs conceded she had no evidence of a conspiracy between the County defendants and ResCare. Even assuming such evidence existed, however, the fact Res-Care did not bid to operate the Day Treatment Program would have prevented Ms. Ahlstrom from establishing her conspiracy theory as a matter of law. Summary judgment is granted with regard to Ms. Ahlstoms's conspiracy claim against the County defendants under count II of the complaint.

C. Plaintiffs' Tortious Interference with a Contract Claim

 Count III of plaintiffs' complaint alleges that defendants Johannsen, Eichelberger, Marr and Watkins "improperly interfered with the Plaintiffs' contracts of employment by causing them not to be

hired/retained by the agency providing care to disabled people of Muscatine County." Complaint at ¶ 39. The County defendants argue that they enjoy legislative immunity on this count based on the Iowa Supreme Court's ruling in *Teague v. Mosley*, 552 N.W.2d 646, 649 (Iowa 1996). Again, this Court agrees with the County defendants' position.

 In *Teague*, the Iowa Supreme Court held that county supervisors acting in a legislative capacity have absolute immunity for "actions taken in connection with their official duties." It further held that decisions regarding funding decisions for the county jail fell within the scope of legislative immunity, expressly rejecting the plaintiff inmate's argument that such duties were administrative, rather than legislative. *Id.* at 650. As explained by the court: "Extending immunity to the supervisors in this context, as we do, serves the goal of protecting legislators from suits, while still providing injured parties with recourse. Because the supervisors are elected, their decisions are subject to review by their constituents." *Id.*

Admittedly, the United States Supreme Court made clear in *Bogan v. Scott–Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998), that "whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Nevertheless, in the present case, the Court finds no legal basis on which to distinguish the actions of the county supervisors in *Teague* in allocating funds to staff and operate the county jail from the present county supervisors' conduct in making funding and long-term operational decisions regarding care of disabled county residents.[7] Summary

7. In resisting defendants' immunity argument, plaintiffs cite to *Maitland v. Univ. of Minnesota*, 260 F.3d 959, 962 (8th Cir.2001), which in turn relied on *Stanley v. Magrath*, 719 F.2d 279 (8th Cir.1983). Initially, the

Court notes that plaintiffs' tortious interference claim is governed by Iowa law. Accordingly, the Iowa Supreme Court's decision in *Teague* is controlling. Secondly, in both

judgment therefore is granted on count III of plaintiffs' complaint in favor of all county defendants on grounds of legislative immunity.

## II. CONCLUSION

For the reasons outlined above, the County defendants' motion for summary judgment is granted with regard to all three counts of plaintiffs' complaint. Plaintiffs are directed to inform the Court as to whether they desire to proceed against the remaining defendant, ResCare, prior to the final pretrial conference on Friday, February 28, 2003.

IT IS SO ORDERED.

*Maitland* and *Stanley,* the defendants at issue were individual members of the State Board of Regents-who are one step removed from the electoral process, and thus, not directly subject to review by their constituents. *See* Op. Atty. Gen., 618–A–2. (Minn. Feb. 6, 1959) (Board of Regents elected by state legislature; however, failure on part of legislature to elect successors would enable governor to appoint successors).